**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Joclyn D., on behalf of J.D.P., a minor, | )<br>)<br>) |
| *Plaintiff,* | )<br>) |
|  | ) Case No. 3:20-cv-50213 |
| v. | )<br>) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi,<br>Acting Commissioner of Social Security,[1] | )<br>)<br>) |
| *Defendant.* | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff's mother, Joclyn D., brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying supplemental security income for her minor daughter.[2] For the reasons set forth below, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

**I. Background**

Plaintiff was born on August 11, 2006. R. 157. Plaintiff's mother testified that she began to notice Plaintiff falling behind other children when she was seven years old. R. 52. Plaintiff's mother also testified that Plaintiff was tested at school and held back a year because the school did not think she was ready to enter the next grade. *Id.* Plaintiff has had individualized education plans ("IEPs") for school, which includes special education services for math, reading, and writing, and

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

1

special accommodations for many other classes. R. 209, 547. Four of Plaintiff's former teachers completed questionnaires about Plaintiff's functioning at school:

- Ms. Volk, Plaintiff's 4th grade teacher in all subject areas, wrote that Plaintiff was at a 2nd grade reading level, 3rd grade math level, and a low level of written language. R. 196. For eight of the ten activities under "acquiring and using information," she rated Plaintiff as having obvious problems, noting that Plaintiff needed to be retaught and required one-on-one help. R. 197. Under "attending and completing tasks," Ms. Volk rated Plaintiff in four of thirteen activities as having obvious problems and in another four as having slight problems. R. 198. She also noted that Plaintiff needed to be redirected to finish her work and was given shortened assignments and longer time to finish work. *Id*. For five of the ten activities under "caring for herself," Ms. Volk rated Plaintiff as having slight problems, and she noted that Plaintiff struggled with emotion and expressing feelings. R. 201. Under "health and physical well-being," Ms. Volk noted that Plaintiff usually needs her inhaler after gym class. R. 202.

- Ms. Sayers, Plaintiff's 6th grade math and science teacher, rated Plaintiff as having serious or obvious problems for nine of the ten activities under "acquiring and using information." R. 336-37, 344-45. She also noted that Plaintiff relied heavily on her peers or teacher to comprehend material, and she had an individual in class with her and a "Learning Center class" for additional supports. R. 337, 345. Under "attending and completing tasks," Ms. Sayers rated Plaintiff in two areas as having "serious problems," in four areas as having "obvious problems," and in another two areas as having "slight problems." R. 338, 346. She noted that Plaintiff gets easily distracted but does attempt to regain focus. *Id*. For "caring for herself" and "health and physical well-being," Ms. Sayers did not observe any problems. R. 341-42, 349-50.

- Ms. McIlwain, Plaintiff's 6th grade social studies teacher, wrote that Plaintiff was at a 4th grade reading level but was unable to comment on Plaintiff's written language level. R. 320, 352. She rated Plaintiff as having "slight problems" in four of the ten activities under "acquiring and using information," R. 321, 353, and in one activity under "attending and completing tasks." R. 322, 354. Under "caring for herself," Ms. McIlwain noted that she did not observe any problems. R. 325, 357.

- Ms. Beasley, Plaintiff's 6th grade physical education teacher, left the section about Plaintiff's reading, math, and written language levels blank and wrote that she did not observe problems with "acquiring and using information." R. 360-61. She rated Plaintiff as having "slight problems" in two "attending and completing tasks" activities R. 362. Under "caring for herself," Ms. Beasley rated Plaintiff as having "obvious problems" in two activities and "slight problems" in three activities. R. 365. She also noted: "I've had to approach her (vs. her coming to me) when she would be upset & sit-out. We've started communicating via written notes now, but she still requires prompting." R. 365. Under "health and physical well-being," she indicated that Plaintiff uses an inhaler at school and has only requested it a couple of times. R. 366.

2

In addition to receiving assistance at school, Plaintiff's mother testified that Plaintiff requires assistance at home with her personal care and hygiene. R. 53-55. In terms of physical health, Plaintiff was diagnosed with asthma at birth and uses an inhaler. R. 52, 55, 542. She has been hospitalized on several occasions due to asthma exacerbation. R. 533, 576, 583, 590.

In January 2017, when Plaintiff was 10 years old, her mother filed an application for supplemental security income ("SSI") benefits on her behalf. R. 34, 59. Her claim was denied initially and upon reconsideration. R. 67, 82. Thereafter, Plaintiff's mother filed a written request for a hearing, which was held in March 2019. R. 31. Plaintiff was 12 years old at the time of the hearing. R. 35. On May 3, 2019, an administrative law judge ("ALJ") issued a decision finding Plaintiff not disabled. R. 13-25. He found that Plaintiff had the following severe impairments: asthma; sickle cell trait; obesity; dextrocardia; cardiomegaly; and learning disorder. R. 16. The ALJ determined that Plaintiff's impairments did not meet, medically equal, or functionally equal a listed impairment. *Id*. The ALJ considered the six childhood domains and found that Plaintiff had less than marked restrictions in five of the six domains and no restrictions in one domain. R. 19-25. Plaintiff appealed the ALJ's decision to this Court in June 2020.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)

(citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that the ALJ erred in: (1) finding that Plaintiff had less than marked limitations in four of the six childhood domains; (2) failing to adequately compare Plaintiff's conditions to children of similar age; and (3) failing to address Plaintiff or her mother's testimony for which he made no credibility determination. Pl.'s Br. at 1, Dkt. 24.

**Six domains**

The Social Security Administration ("SSA") has prescribed a three-step process for evaluating child-disability claims. 20 C.F.R. § 416.924. First, if the child is engaged in substantial gainful activity, i.e., is earning money, then she is not disabled. *Id*. § 417.924(b). Second, if the child's impairments are not severe, then she is not disabled. *Id*. § 416.924(c). Third, the child's impairment must meet, equal or functionally equal an impairment listed in the SSA's regulations as being presumptively disabling. *Id*. § 416.924(d). A child's impairment or group of impairments will functionally equal a listed condition when it is of listing-level severity, meaning that it results in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. *Id*. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1). A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." *Id*. § 416.926a(e)(2)-(3).

4

Plaintiff asserts that record evidence shows that she had marked limitations in four domains of functioning: (1) ability to acquire and use information; (2) attending and completing tasks; (3) caring for yourself; and (4) health and physical well-being. Pl.'s Br. at 10, Dkt. 24. She argues throughout her opening brief that the ALJ's determination with respect to these four domains was not supported by substantial evidence because he failed to appropriately analyze information and build a logical bridge between the evidence and his conclusions, ignored evidence favorable to Plaintiff, and cherry-picked unfavorable evidence to support his conclusions. The Court will address these arguments with respect to each of the four contested domains.

**1. Ability to acquire and use information**

For this domain, the regulation for school-age children (6 to 12 years old) states:

> [Y]ou should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned, e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations . . . (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language . . . to share information and ideas . . . by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). In the ALJ's analysis of this domain, he wrote:

> <u>The claimant has less than marked limitation in acquiring and using information</u>. The claimant received special education, but only in math and reading. Her intelligence testing revealed average-to-low average results, without any borderline intelligence findings. While she received special education, it was only for a portion of the day, with the rest of it being performed in general education. For these reasons, she is found to have less than marked restriction in this domain of functioning.

R. 20 (emphasis in original) (internal citation omitted).

The ALJ's brief three-sentence analysis of this domain is problematic for several reasons. First, he gives just three reasons for his finding regarding this domain. The first reason, that the

5

claimant received special education "only in math and reading," is a misstatement. Plaintiff received special education services in reading (150 minutes per week ("mpw")), math (150 mpw), *and writing* (150 mpw). *See* R. 224, 226, 555, 557, 559. The misstatement aside, the ALJ does not explain why requiring special education in "only" math and reading supports his conclusion that Plaintiff has a less than marked limitation in this domain. The SSA regulations discuss that a child between the ages of six through twelve should be able to read, write, and do math, and those are the three subjects in which Plaintiff requires special education. Thus, without further explanation it is unclear how the first rationale supports a conclusion that Plaintiff has less than marked limitations in acquiring and using information.

The third rationale listed by the ALJ suffers from the same problem. The ALJ states that Plaintiff received special education only for a portion of the day with the rest being performed in general education. Again, there is no explanation or analysis here. Is the ALJ saying that a certain proportion of a claimant's day has to be in special education classes in order for there to be a marked finding in this domain? There is no such requirement in the regulations. Rather, the regulations focus on how well the child acquires or learns information and how well she uses the information she has learned. *See Hopgood v. Astrue,* 578 F.3d 696, 699 (7th Cir. 2009). By focusing on the fact that Plaintiff received some education in a general education setting, the ALJ fails to discuss that Plaintiff needed and received "extra reinforcement in the general education classroom" and had supplementary aids and modified assignments in virtually all subject areas. R. 224, 547, 548, 555. For example, Plaintiff's science teacher, Ms. Sayers, wrote that Plaintiff "relies heavily on other peers, her SPED teacher or myself to help her comprehend material. She has additional time to work on assignments during her Learning Center class [with] the SPED teacher." R. 345. In fact, the only settings in which Plaintiff could operate without supplemental

6

accommodations were field trips, assemblies, library, and extra-curricular activities. R. 224, 555. The ALJ's failure to accurately recount Plaintiff's specific need for special education services in reading, math *and writing* coupled with his failure to address her need for accommodations and special assistance in her general education classes leaves the Court to wonder whether he considered and dismissed this evidence or completely failed to consider it. Either way, the Court cannot follow the ALJ's path of reasoning here. *See Baker v. Barnhart,* 410 F. Supp. 2d 757, 766 (E.D. Wisc. 2005) (the ALJ's reasoning that the child received some special education but mostly attended regular class improperly omitted fact that child required significant accommodations in his general education classes); *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018) ("We could not discern from the ALJ's scant analysis whether he considered and dismissed, or completely failed to consider, this pertinent evidence, so the ALJ did not build a logical bridge from the evidence to his conclusion.") (internal quotations omitted).

The only other reason cited by the ALJ – her average to below average results on intelligence testing – is also inadequate to support his conclusion that Plaintiff has a less than marked limitation in acquiring and using information. The only testing that the ALJ discussed in his decision was the 2017 "intellectual testing"[3] performed by consultative examiner Peter Thomas, Psy. D. R. 537-39. The regulations are clear that an ALJ may not rely on any single test score when deciding if an impairment is marked or extreme. 20 C.F.R. § 416.926a(e)(4)(i) ("[W]e will not rely on any test score alone."); *id*. § 416.924a(a)(1)(ii) (when determining disability for children, "we will not rely on test scores alone when we decide whether you are disabled."). Moreover, as Plaintiff argues, an ALJ may not select and discuss only evidence that favors his conclusion but has an obligation to reconcile any material inconsistencies. Pl.'s Br. at 11, Dkt. 24;

---

[3] The actual test performed was the Wechsler Intelligence Scale for Children – Fourth Edition (WISC -IV).

7

*see Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Yet, here, the ALJ cherry-picked certain test results and completely ignored others without explanation, including Plaintiff's standardized testing in math and English language that placed her in the bottom third and fourth percentiles among her peers throughout the state, R. 275-78, and her Woodcock-Johnson IV test results which demonstrated that her reading, math, and overall achievement levels were roughly 1.5 years below her peers, R. 208. As a result, the Court finds that each of the reasons cited by the ALJ in his analysis paragraph were not supported by substantial evidence.

The Commissioner argues that the ALJ is not required to discuss everything in the record and that his decision should be read holistically, rather than exclusively under the specific headings. Def.'s Br. at 5-6, Dkt. 29. The problem with these arguments is that the ALJ also misrepresented, failed to analyze, and cherry-picked evidence relevant to this domain in the remainder of his decision. For example, as Plaintiff points out, the ALJ cherry-picked evidence from the four teachers' opinions. Pl.'s Br. at 11, Dkt. 24. He briefly discussed three of the four teachers' opinions in his decision – all but Ms. Volk's[4] – and asserts that only one (Ms. Sayers) reported Plaintiff had serious problems in acquiring and using information while the two other teachers reported "obvious or less severe problems." R. 18. The ALJ seems to be using a score card approach to evaluate the teacher's opinions here. The problem with this approach is that it assumes that Plaintiff's *physical education* teacher and *math and science* teacher would be able to observe and provide equally relevant information about her ability to solve math problems, use complex language, and produce oral and written projects. *See* 20 C.F.R. § 416.926a(g)(2)(iv); *see also Baker*, 410 F. Supp. 2d at 768 (pointing out that the opinions of certain school personnel

---

[4] The ALJ does not explain why he left out Ms. Volk's opinion, and this is curious considering she taught Plaintiff in all subject areas and would have knowledge about Plaintiff's abilities in this and other domains.

8

would be more important for the ALJ's analysis than others). In addition, the ALJ seems to group one teacher's observation of "obvious" problems in with other teachers' observations of slight problems or no problems in this domain. But it is unclear why the ALJ interpreted "obvious problems" to be inconsistent with "serious problems," especially considering some courts interpret such ratings, along with other evidence, to support a marked limitation. *See Gantner ex rel. J.J. v. Berryhill*, No. 17 C 00066, 2017 WL 5891038, at *6 (N.D. Ill. Nov. 27, 2017); *Devon C. v. Comm'r of Soc. Sec.*, No. 20-CV-00122, 2021 WL 2280987, at *4 (W.D.N.Y. June 4, 2021); *Tribble v. Comm'r of Soc. Sec.*, No. 1:14-CV-704, 2015 WL 7179662, at *8 (S.D. Ohio Nov. 16, 2015). Finally, even assuming that there was a legitimate conflict between her math and science teacher's opinion that Plaintiff had serious problems in acquiring and using information and her physical education and social studies teachers' opinions that her problems were obvious or slight, the ALJ nonetheless failed to resolve the conflict between these three opinions. *See Kasarsky*, 335 F.3d at 543 ("[T]he ALJ must confront evidence that does not support his conclusion and explain why it was rejected."); *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."). Without further analysis the Court cannot follow the ALJ's train of thought here.

The analysis of the teachers' opinions aside, throughout the remainder of his opinion the ALJ misstated several pieces of evidence or otherwise relied on inaccurate information to support his opinions regarding Plaintiff's ability to acquire and use information. *See Shankle v. Colvin*, 14-CV-380-JPS, 2014 WL 6686626, at *4 (E.D. Wis. Nov. 26, 2014) (remanding because the ALJ's decision relied on incorrect information and, therefore, was not supported by substantial evidence). One example is the ALJ's statement that the medical expert ("ME"), Dr. Nimmagadda, "opined that the claimant had a less than marked restriction in acquiring and using information." R. 18-19.

9

Not only did the ME not discuss this domain, *see* R. 46 (referencing all domains except "acquiring and using information"), he testified that his opinions about Plaintiff's limitations were based purely on her physical limitations and would have no bearing on whether mental limitations would create a different result. R. 47. It is unclear how an assessment of physical limitations could inform an opinion on an individual's academic skills, class discussions, capacity to share information and ideas, and other aspects of this domain. *See* 20 C.F.R. § 416.926a(g)(2)(iv).

A second example is the ALJ's statement that Plaintiff "was well prepared for middle school." R. 17. If accurate, this statement would certainly inform a conclusion about Plaintiff's ability to acquire and use information. However, this statement does not appear in the record and the ALJ provides no explanation for how he came to this conclusion. In this Court's review, this statement seems to be derived from a note in Plaintiff's IEP: "Mom wants [Plaintiff] well prepared for middle school." R. 547. Comparing these two sentences, it appears that the ALJ misrepresented the note in his discussion, which undermines the reliability of his conclusion.

Still another relevant example of the ALJ's inaccurate statements is his assertion that Plaintiff was not held back any grades. R. 18. There is nothing in the record to support this statement. To the contrary, Plaintiff's mother testified that Plaintiff was tested around seven years old and, based on the results, the school chose to have Plaintiff stay behind because they felt she was not ready for the next grade. R. 52-53. This is corroborated by the two kindergarten report cards in the record, one for the 2011-2012 school year and another for the 2012-2013 school year. *See* R. 303-310. In sum, because the ALJ failed to provide any analysis to support his conclusion, coupled with the various misstatements he made regarding evidence relevant to this domain, the Court finds that the ALJ's decision regarding this domain is not supported by substantial evidence.

Moreover, there is a significant amount of information relevant to this domain that the ALJ did not discuss:

- On Plaintiff's 3rd grade report card, only about 25% of the reading, writing, and math standards were rated as having been learned to proficiency. R. 291-93.

- On Plaintiff's 4th grade report card, only 25% of the reading, writing, and math standards were rated as having been learned to proficiency. R. 287-90.

- On Plaintiff's 5th grade report card, only about 10% of standards were rated as having been learned to proficiency. R. 283-86.

- Plaintiff's IEPs consistently stated that she required supplementary aids, accommodations, and modifications for all academic assessments. R. 210, 548.

- When Plaintiff's peers were expected to be reading at an end-of-4th grade reading level, she was reading at mid-2nd grade level. R. 547.

- Plaintiff's Woodcock-Johnson IV test results demonstrated significant delays in reading and writing academic skills when compared to her peers. R. 208. Her reading, math, and overall achievement levels were roughly 1.5 years below her peers. *Id.*

- Plaintiff's 4th grade mathematics assessment reflected that she was performing at the lowest level and that she did the same or better than only 3% of Illinois students. R. 275.

- Plaintiff's 4th grade English language arts/literacy assessment reflected that she was performing at the lowest level and that she did the same or better than only 4% of Illinois students. R. 277.

The Court finds it troublesome that the ALJ neglected to mention so many of Plaintiff's academic evaluations, report cards, and IEPs. *See Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (the ALJ's "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal"); *Plessinger*, 900 F.3d at 915 (7th Cir. 2018) ("ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings.").

### 2. Attending and completing tasks

> For this domain, the regulation for children 6-12 years old states:
>
> [Y]ou should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). In the ALJ's analysis of this domain, he wrote:

> <u>The claimant has less than marked limitation in attending and completing tasks</u>. The claimant required redirection to complete work, and she was not diagnosed with attention deficit hyperactivity disorder. She attempted to regain focus on her own. In her October 2018 Teacher Questionnaire, it was noted that the claimant only had one slight problem with attending and completing tasks. For these reasons, the claimant had less than marked restriction in this domain of functioning.

R. 21 (emphasis in original) (internal citation omitted).

Plaintiff argues that a diagnosis of ADHD is not necessary to find a marked limitation in this domain. Pl.'s Br. at 12, Dkt. 24. The Commissioner does not contest this, nor could she. The Seventh Circuit specifically rejected the assumption that if a claimant is not diagnosed with ADHD they cannot have marked limitations in attending and completing tasks. *See Giles*, 483 F.3d at 488 (noting many causes of attention problems are unrelated to ADHD and faulting the ALJ for assuming that "because [the claimant] was not diagnosed with ADHD, his attention problems could not have been 'marked'"); *see also Bloyer v. Colvin*, No. 13 CV 50356, 2015 WL 75033, at *3 (N.D. Ill. Jan. 6, 2015).

The Commissioner does argue that the ALJ gave other valid reasons for finding a less than marked limitation in this domain. Def.'s Br. at 6, Dkt. 29. However, the remaining reasons listed by the ALJ are not supported by substantial evidence. The ALJ cherry-picked portions from the

12

teacher's opinions discussed above to support his conclusions about Plaintiff's ability to attend and complete tasks. For example, in the third sentence, the ALJ stated that Plaintiff attempted to regain focus on her own. This statement is derived from an observation made by Ms. Sayers: "[Plaintiff] gets easily distracted by others but does attempt to regain focus." R. 338. The ALJ neglected to mention the first half of her statement and instead cherry-picked the half that supported his conclusion. *See Scrogham,* 765 F.3d at 698 ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Muncy v. Colvin*, No. 12 C 2942, 2015 WL 361463, at *5 (N.D. Ill. Jan. 28, 2015) (remanding in part because the ALJ's assessment of the domain completely disregarded the evidence that supported a finding of disability). Moreover, the ALJ does not explain how "attempting" to regain focus supports his conclusions here.

Additionally, in the fourth sentence, the ALJ shared just *one* teacher's ratings of Plaintiff's ability to attend and complete tasks (which, coincidentally, was the opinion most favorable to the ALJ's conclusion). The ALJ does not explain why he neglected to include Ms. Sayers' ratings of this domain, which indicated serious or obvious problems in six activities in this domain, or Ms. Volk's ratings, which indicated obvious problems in four activities. R. 196, 198. *See Mason o/b/o A.M. v. Saul*, No. 18 CV 50329, 2020 WL 1445609, at *4 (N.D. Ill. Mar. 25, 2020) ("The ALJ did not explain why these four pieces of evidence were chosen [out of the many other reports and statements that could have been chosen] . . . The failure to provide an explanation raises the concern of cherrypicking."); *see also Kasarsky*, 335 F.3d at 543 ("[T]he ALJ must confront evidence that does not support his conclusion and explain why it was rejected.").

Moreover, while in the body of his decision the ALJ gives great weight to Dr. Nimmagadda's opinions regarding this domain, R. 18, as noted above, Dr. Nimmagadda's

13

opinions do not provide substantial evidence to support the ALJ's opinion here. The ME testified that his opinion was based on Plaintiff's physical limitations and had no bearing on whether mental limitations would create a different result. R. 47. As such, it is unclear (nor does the ALJ explain) how an assessment of physical limitations could inform an opinion on an individual's capacity to focus, follow directions, and complete school assignments. *See* 20 C.F.R. § 416.926a(h)(2)(iv).

Once again, there is a significant amount evidence relevant to this domain that was not discussed or even listed in the ALJ's decision:

- On Plaintiff's IEP, her accommodations and modifications included having extended time (up to 150%) to complete tasks, having her tasks broken into chunks, breaking directions into two steps to ensure her understanding and retention, preferential seating for focus, and repeating or restating directions to ensure Plaintiff's understanding. R. 210, 548.

- In the Function Report from 2017, Plaintiff's mother noted that Plaintiff's ability to pay attention and stick with a task was limited, that she does not finish things she starts, and that she does not complete homework. R. 185.

- In the section of Plaintiff's April 2017 IEP discussing her functional performance, it was noted that she has a hard time completing tasks when she comes back from the resource room and has a hard time keeping things organized. R. 547.

- On Plaintiff's 4th grade, 3rd grade, and 2nd grade report cards, two standards – completing tasks in a timely manner and taking care of materials – were rated as not being learned to proficiency. R. 287, 291, 295.

- Plaintiff testified that she has a designated person who helps her stay on task and finish homework. R. 50. When asked what kind of trouble she has finishing her homework, she responded, "Mostly a lot." *Id*.

- Plaintiff's mother testified that she has to frequently remind Plaintiff how to do her chores, how to bathe herself, to make sure her clothes are straight, and how to use her inhaler because she is unable to retain that information. R. 53-55.

For all of the above reasons, remand is necessary for a proper evaluation of this domain.

### 3. Caring for yourself

For this domain, the regulation states:

> Caring for yourself effectively, which includes regulating yourself, depends upon your ability to respond to changes in your emotions and the daily demands of your environment to . . . [take] care of your personal needs, health and safety. It is characterized by a sense of independence and competence. . . Caring for yourself effectively means becoming increasingly independent . . . This entails relying on your own abilities and skills, and displaying consistent judgment about the consequences of caring for yourself. . . Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age.

20 C.F.R. § 416.926a(k)(1)(i). For children 6-12 years old, the regulation states that the claimant should be independent in most day-to-day activities (though they may still need occasional reminders), begin to develop an understanding of what is acceptable and unacceptable behavior, begin to demonstrate consistent control over their behavior, avoid behaviors that are unsafe, and begin to imitate more adult behaviors. 20 C.F.R. § 416.926a(k)(2)(iv).

In the ALJ's analysis of this domain, he wrote:

> <u>The claimant has less than marked limitation in the ability to care for herself.</u> While the claimant was noted to have some issues with hygiene, these were not noted as persistent in nature. She was able to do chores and take care of her personal hygiene. For these reasons, she is found to have less than marked restriction in this domain of functioning.

R. 24 (emphasis in original) (internal citation omitted).

Plaintiff argues that the ALJ did not analyze or make a credibility determination regarding the unrebutted testimony about her significant issues with personal care, which indicated she was performing well below what would be expected of a 12-year-old. Pl.'s Br. at 12-13, Dkt. 24. The Commissioner responds that, while the testimony is unrebutted, it is also unsupported by any documentation from Plaintiff's school or doctors. Def.'s Br. at 7, Dkt. 29.

Plaintiff is correct that the ALJ failed to analyze, or even discuss, the testimony relating to Plaintiff's limitations in her ability to perform personal care. While the regulations define personal care to include toileting, the ALJ does not discuss Plaintiff's recurrent problem of defecating in

15

her pants. Plaintiff testified about having problems with being unable to "hold it" and that she has accidents. R. 50-51. Both medical consultants included this issue in their reports. R. 536, 542. It was also noted that Plaintiff was having problems cleaning herself up after these accidents because she was forgetting to do it. R. 255. The ALJ does not address this issue and it is unclear if he was unaware of it or discounted it.

The regulations also define personal care to include bathing. Plaintiff's mother testified about Plaintiff's inability to bathe independently. R. 542. Plaintiff's mother testified that she goes over in detail that Plaintiff needs to wash daily and reminds Plaintiff how to bathe properly about three to four times a week. R. 53. Again, the ALJ does not mention Plaintiff's inability to bathe independently. The ALJ does state that while Plaintiff has some issues with hygiene these were not noted as persistent. However, because the ALJ did not mention the toileting or bathing issues in his decision it is unclear if he is referring to one or both of them as part of Plaintiff's "hygiene issues." Notably there is evidence in the record that both issues were persistent. *See, e.g.,* R. 536, 542. Perhaps the ALJ had reason to disbelieve the persistence of these issues. However, without the ALJ's discussion of the evidence and explanation of how it proves his conclusion, the Court cannot follow the ALJ's logic. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (without an explanation of how or why the ALJ assessed the evidence the way he did, a court is unable to properly review the ALJ's evaluation); *Anders v. Saul*, 860 Fed. App'x. 428, 432 (7th Cir. 2021) (unpublished) ("In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion.").

The Commissioner argues that Plaintiff's personal care issues were unsupported by any documentation from Plaintiff's school or doctors. Def.'s Br. at 7, Dkt. 29. However, the ALJ did

not cite this as a reason for discounting the testimony and, as such, this constitutes an impermissible *post hoc* rationalization. *See Jeske v. Saul,* 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales, we do not uphold an ALJ's decision by giving it different ground to stand upon.").

The ALJ also concluded that Plaintiff was able to do chores but failed to provide any discussion of the testimony in the record regarding this issue. Plaintiff's mother testified that Plaintiff's assigned chores were vacuuming, doing the dishes, and cleaning her room. R. 55. However, she explained that she goes back over and redoes those chores on a daily basis, despite her attempts to reteach Plaintiff how to do them. *Id*. Plaintiff's mother also noted that teaching her how to do chores is different compared with her son in that when her son was Plaintiff's age, he picked things up after being taught just a couple of times, whereas Plaintiff requires being retaught daily. R. 55-56. One of the medical consultants also noted that Plaintiff was able to follow instructions for washing dishes, but whether the dishes would be clean afterwards was variable. R. 542. This evidence appears inconsistent with the ALJ's conclusion that Plaintiff was "able to do chores." However, because the ALJ did not reference *any* evidence, the Court is unable to follow the logic in his analysis. *See Giles*, 483 F.3d at 486 ("An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion."). The failure to build a logical bridge here warrants remand.

**4. Health and physical well-being**

For this domain, the regulation states that the agency will consider the "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies" on a child's functioning. 20 C.F.R. § 416.926a(l). In the ALJ's analysis of this domain, he wrote:

17

> <u>The claimant has less than marked limitation in health and physical well-being</u>. While the claimant presented to the emergency room for issues with asthma, these issues were not persistent, and her asthma was not noted as being problematic by any of her teachers. For these reasons, she is found to have less than marked restriction in this domain of functioning.

R. 25 (emphasis in original) (internal citation omitted).

Plaintiff argues that she has a greater limitation than what the ALJ determined, citing that she has been to the hospital six times in three years for asthma attacks, required reminders of how to properly use an inhaler, and was restricted from running as part of her IEP. Pl.'s Br. at 13, Dkt. 24. The Commissioner argues that the crux of Plaintiff's argument is that she would have weighed the evidence differently, which is not a basis for remand. Def.'s Br. at 7-8, Dkt. 29.

The Court concludes that the ALJ's finding with respect to this domain is supported by substantial evidence. As an initial matter, the ALJ did discuss most of the pieces of evidence Plaintiff cites. With respect to Plaintiff's allegations that she had running restriction in her IEP, the Court was unable to find such a restriction in *any* of the IEPs in the record.[5] *See* R. 206-34, 269-82, 545-65. The ALJ noted that Plaintiff was able to participate in gym class, had no limitations related to her asthma at school, and her physical education teacher did not indicate any physical restrictions in gym class, and, in this Court's review of the record, those statements are accurate. R. 17, 18. Regarding Plaintiff's hospital visits, the ALJ did discuss the asthma-related visits to the emergency room. R. 17, 18. However, the ALJ indicated that the asthma incidents were not persistent and did not result in any physical restrictions in gym class or physical limitations at school, and that Plaintiff's mother noted Plaintiff enjoyed riding her bicycle. *Id*. Finally, with respect to Plaintiff's utilization of an inhaler, the ALJ did discuss Plaintiff's inhaler

---

[5] The only reference to a running restriction that this Court found was in the function report filled out by Plaintiff's mother, which indicated that Plaintiff's physical abilities were limited in that she could not run. R. 17. The ALJ discussed this in his decision. *See* R. 182.

use in the context of the physical education teacher's questionnaire, and also pointed out that the teacher did not note any issues with it. R. 18.[6]

Moreover, the ALJ gave great weight in his decision to Dr. Nimmagadda, the ME who opined that Plaintiff had a less than marked restriction in health and physical well-being. R. 18-19. As this Court has previously noted, Dr. Nimmagadda gave an opinion based on Plaintiff's physical limitations which, while inappropriate to support his opinions for the other domains, is appropriate for this domain, given that it involves evaluating the *physical* effects of a claimant's impairments on their functioning. *See* 20 C.F.R. § 416.926a(l). As such, substantial evidence supports the ALJ's conclusions as to this domain.

In summary, the Court finds that the ALJ's conclusions on three of the four contested domains are not supported by substantial evidence. Thus, remand is warranted. In remanding the case, the Court is not concluding or indicating that the issues raised in this appeal must be resolved in a particular way, but rather that they should be explored more thoroughly. Each of these domains should be considered on remand with more explicit analysis. Additionally, the ALJ must analyze Plaintiff and her mother's testimony on remand. When evaluating an individual's symptoms, Social Security Ruling 16-3p states that an ALJ must "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p. Here, the ALJ recited only a few pieces of testimony, and he was obligated to evaluate whether those statements were consistent with other evidence, which he failed to do.

Any remaining issues not addressed herein can be considered on remand along with the above issues. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a

---

[6] Notably, the physical education teacher explicitly wrote that Plaintiff self-regulates her activity and that she had only requested the inhaler a couple of times. R. 366.

pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

Date: March 11, 2022  By: _Lisa A. J_____
Lisa A. Jensen
United States Magistrate Judge